DOWNING, J.
12This appeal arises from a case review/permanency review judgment regarding L.H., a twelve-year-old child in custody of Louisiana Department of Social Services/Office of Community Services (OCS). L.H.’s mother appeals the trial court judgment that continued the child in custody of OCS but changed L.H.’s placement goal from reunification to adoption.[1] For the following reasons, we reverse the trial court judgment.
In June 2004, L.H. and her mother, M.K.F.,[2] moved from Texas to Covington, Louisiana, to reside with M.KF.’s boyfriend, R.C. On April 18, 2005, OCS received a report regarding L.H.’s lack of supervision. This led to an allegation of sexual abuse. Specifically, L.H. accused R.C. of fondling her beneath her clothes when he put her to bed at night. M.K.F. did not believe the accusation against her boyfriend. Consequently, OCS removed L.H. from the home and placed her in foster care.
OCS had L.H., M.K.F. and R.C. undergo psychological evaluations by Dr. Rafael F. Salcedo, a forensic psychologist. After the evaluations, Dr. Salcedo reported that L.H., who was ten years old at the time, had a verbal IQ of 70, indicating a mild retardation. He reported that M.K.F., a fifty-one-year old female, was in denial about the alleged sexual abuse and that at this time, she was not in a position to adequately protect the child from further abuse. Dr. Salcedo reported that he found R.C. to be a fifty-two-year old male who was extremely defensive about the charges against him. Dr. Salcedo reported that he could not determine if R.C. had any under *368 lying sexual disorders. R.C. was arrested[3] and charged with a related offense.
[a0n May 17, 2005, the OCS child welfare specialist, Carmen Clay, formulated a case plan in which M.K.F. was to be instructed on how to provide a safe and stable home for her child. This included parenting skill classes in which M.K.F. and R.C. were both enrolled. The case plan also provided that M.K.F. was to attend therapy sessions with Julie Kringas, the clinical director for Family Services of Greater New Orleans — Northshore Offices. A hearing was held on July 14, 2005, and the trial court ordered that L.H. be continued in custody at a certified foster home. The trial court approved the May 17, 2005 case plan submitted by OCS, approving the goal of reunification for M.K.F. and L.H.
The record reflects that pursuant to the case plan, M.K.F. attended the scheduled weekly visits with L.H., attended all therapy sessions, paid OCS the required child support amount, found stable employment, and secured separate housing for herself. Ms. Clay reported these results to the court. Ms. Clay’s report also recommended that the ultimate goal in this matter was to be reunification. On December 1, 2005 the court again ratified the six-month review case plan confirming that the goal was still reunification.
Ms. Kringas continued counseling M.K.F on a weekly basis until she discovered that M.K.F. was independently seeing another counselor. At this time, Ms. Krin-gas terminated her relationship with M.K.F. and stated that she could not continue the therapy because she considered treatment by two therapists to be unethical. Ms. Kringas then alerted OCS that her relationship with M.K.F. had been terminated because M.K.F. was not making progress in therapy. Ms. Kringas also informed OCS that in her opinion, M.K.F. was angry with L.H. about the abuse accusations and, therefore, she was unable to protect the child from further abuse. It was also |4her opinion that M.K.F. was not putting the child first, which showed a lack of empathy towards the child as a victim.
After Ms. Kringas discontinued her treatment of M.K.F., she continued treatment with Ms. Teri Groves, an independent therapist.[4] At the hearing on May 9, 2006, which is the subject of the judgment at issue, Ms. Groves explained to the trial court how M.K.F. felt alienated when she began therapy with Ms. Kringas. She felt that OCS was not on her side. Ms. Groves explained to the court that until the therapist can get the client to let her guard down, the client would be unable to work through difficult issues such as the denial issues in this case. Ms. Groves further explained that when she began to introduce M.K.F. to concepts of how to work through her denial and to see that R.C. was perhaps guilty of the allegations, she saw M.K.F. making progress in this direction. She explained to the court some of the techniques that are used to build goals and to further the reunification objective. Ms. Groves testified that she found M.K.F. to be “very sincere.” She concluded that although she needed some help working through her denial, her reaction was typical in this sort of situation. Ms. Groves said that she had seen M.K.F. go from “absolutely not entertaining that idea [that R.C. abused the child], to having *369 more flexibility in her thinking.” Ms. Groves further testified that it was paramount that M.K.F. and L.H. have therapy independently as well as together, so that each person could participate in the conversation and discuss their grievances.
OCS did not consider Ms. Groves’ treatment or conclusions in formulating its proposed ease plan, but her testimony before the trial court was uncontradicted.
[sThe record reveals that the foster custodians caring for L.H. told OCS that they wanted to adopt her if the opportunity arose. On March 17, 2006, OCS changed the M.K.F./L.H. case plan from reunification to termination of parental rights and adoption. After a hearing on May 9, 2006, the trial court adopted the OCS case plan and ruled that M.KF. had made inadequate progress toward alleviating or mitigating the causes necessitating L.H.’s placement in foster care. It also ruled that reunification was impossible at this time and approved the goal change from reunification to adoption.
In addressing the goal change from reunification to adoption, the trial court stated that OCS had made the necessary efforts to achieve permanency. However, the trial court erred in focusing on OCS’s efforts in accordance with La. Ch.C. art. 702 E. The Children’s Code also requires the court to consider whether the parent is “complying with the case plan and making significant measurable progress toward achieving its goals and correcting the conditions requiring the child to be in care.” La. Ch.C. art. 702 C(l).
The uncontradicted evidence in the record shows that M.K.F. was complying with the case plan. And while the judgment at issue states that M.K.F. has made inadequate progress, the proposed OCS case plan presented to the trial court failed to address the progress that M.K.F. was making with Ms. Groves after Ms. Kringas declined to continue M.K.F.’s treatment. Ms. Groves testified that M.K.F. was having trouble with her relationship with OCS. She also testified without contradiction that M.K.F. was now making substantial progress in the reunification process. Even counsel for L.H. argues on appeal that M.K.F. has made substantial progress, though reunification is not appropriate at this time.
|(;We therefore conclude that the trial court’s finding that M.K.F. was making inadequate progress is unsupported by the record, in light of the uncontradicted evidence of Ms. Groves, an expert witness in the field of licensed social work, whose credibility and conclusions are unaddressed and unimpeached.
On review of the record, we reverse the trial court’s ruling approving the OCS case plan dated March 17, 2006. We also reverse the case plan’s goal of adoption for permanent placement. We order OCS to develop a plan consistent with the goal of reunification, subject to further review as provided by law.
The cost of this appeal in amount of $344.50 is assessed against Louisiana Department of Social Services/Office of Community Services. This memorandum opinion is rendered in accordance with Uniform Rules-Courts of Appeal, Rule 2-16.1 B
REVERSED.
PETTIGREW, J., concurs with result.
HUGHES, J., concurs with reasons.

. Case review judgments and permanency judgments are immediately appealable in accordance with La. Ch.C. arts. 700 and 710.

. M.K.F. is actually L.H.'s biological grandmother. She adopted L.H. at birth.

. The record does not reflect the status of this charge or if R.C. was ever convicted.

. The record reveals that Ms. Groves offered to discontinue her treatment if Ms. Kringas would continue hers. When Ms. Kringas failed to re-commence her treatment of M.K.F., Ms. Groves continued to treat her.